UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
LI-SHANN CHANG,

Plaintiff,

- against -

THE CITY OF NEW YORK, *et al.*,

Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
25-CV-2108 (PKC) (PK)

PAMELA K. CHEN, United States District Judge:

Plaintiff Li-Shann Chang, proceeding *pro se*, brings this action based on alleged violations of her civil rights and a purported pattern of racketeering activity. (*See generally* Fourth Am. Compl., Dkt. 22.) She sues three groups of Defendants, all of whom she claims participated in a conspiracy to violate her civil rights: (1) the "City Defendants," including the City of New York, a number of New York City Police Department ("NYPD") police officers and detectives,[1] several Assistant District Attorneys ("ADAs"),[2] and two employees of the NYPD's Records Access Office

[1] Specifically, Craig McGrath, Tiffany A. Martinez, David Gomez, Lovepreet Singh, Cesar Valerio, Dave A. Williams, Desiste Wegemen, Christian A. Lopez, Umar Khitab, Marko Sikiric, Shane Jacobs, Stephanie Mendozablom, Joseph Bisagno, Brandon A. Villabedoya, and one unidentified Doe Defendant, "Doe Detective #1." (*See* Fourth Am. Compl., Dkt. 22, at ECF 10–11.) Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination. The Court notes that the docket lists both an "Officer Stephanie Mendozablom" and an "Officer Stephanie Blom" as separate Defendants, but they both include the same badge number, #14983, and the Court infers that these refer to a single Defendant. In the City Defendants' briefing, they refer to a single "Officer Stephanie Mendoza-Blom." (*See, e.g.*, City Defs.' Mem. Supp. Mot. to Dismiss, Dkt. 126, at 9.) The Court refers to this Defendant as Officer Stephanie Mendozablom for simplicity.

[2] Specifically, Hannah Howard, Fernando M. Leal, and Janette Lukowsky. (*See* Fourth Am. Compl., Dkt. 22, at ECF 11.)

("RAO")[3]; (2) the "Judicial Defendants," who are two New York state court judges[4]; and (3) Plaintiff's former public defender, Jana McNulty ("McNulty"). (*See id.* at ECF 9–11, 14.) All three groups of Defendants have filed motions to dismiss the case. For the reasons explained below, the motions are granted, and the Fourth Amended Complaint is dismissed.

## BACKGROUND

### I. Factual Background[5]

#### A. May 2024 Search, Arrest, and Prosecution

On May 9, 2024, Justice Kim Petersen of the Supreme Court of the State of New York, Kings County, issued a search warrant for Plaintiff's apartment. (Fourth Am. Compl. Ex. A ("5/9/2024 Search Warrant"), Dkt. 22, at ECF 52.) The search warrant states that, based on the affidavit and testimony of NYPD Officer Craig McGrath, there was "reasonable cause to believe that property constituting evidence of an offense"—specifically, a "handgun, handgun ammunition and accessories, spent shell casings, and a cell phone"—would be found inside the apartment. (*Id.*)

---

[3] Specifically, Cynthia Acerra and one unidentified Defendant, "RAO Doe #2." (*See* Fourth Am. Compl., Dkt. 22, at ECF 11, 13, 31.)

[4] Specifically, Justice Kim Petersen and Justice Abena Darkeh. (*See* Fourth Am. Compl., Dkt. 22, at ECF 11.)

[5] Unless stated otherwise, the following facts are taken from Plaintiff's Fourth Amended Complaint and the documents attached to it as exhibits. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss for failure to state a claim, a district court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint"). The facts alleged by Plaintiff are assumed to be true for purposes of this Memorandum & Order. *See Hamilton v. Westchester County*, 3 F.4th 86, 90–91 (2d Cir. 2021) (explaining that, in resolving a motion to dismiss, the court must "accept as true all factual allegations and draw from them all reasonable inferences" (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020))). The Fourth Amended Complaint, which numbers approximately 50 single-spaced pages and 20-plus pages of exhibits, is prolix and difficult to follow, but the Court has endeavored to disentangle and summarize Plaintiff's factual allegations.

Plaintiff alleges that the search warrant was based on "false allegations" made by a confidential witness ("CW").[6] (*See* Fourth Am. Compl., Dkt. 22, at ECF 19.)[7] Plaintiff accuses Officer McGrath of "abus[ing] his power" by coordinating with CW, (*id.*), whom Plaintiff alleges was "known to the NYPD as an unreliable informant," (*id.* at ECF 31). Plaintiff states that CW was acting out of "personal animus, jealousy, and malice" towards her. (*Id* at ECF 19.) Plaintiff claims that she has two active protective orders against CW due to CW's alleged harassment of Plaintiff. (*See id.* at ECF 23.) CW also appears to have a protective order against Plaintiff. (*See id.* at ECF 27 (alleging that Plaintiff was arrested for violating CW's order of protection but denying that Plaintiff had done so).)

On May 14, 2024, the NYPD executed the search warrant for Plaintiff's apartment. (*Id.* at ECF 20.) Plaintiff's 14-year-old son was handcuffed in his underwear and detained by the officers during the search. (*Id.*) Plaintiff states that the experience caused both her and her son psychological trauma. (*Id.*)

As a result of the search, Plaintiff was arrested that day and charged with criminal possession of narcotics, although Plaintiff claims that no narcotics were found during the search. (*Id.*; *see also* Fourth Am. Compl. Ex. B ("Kings Criminal Court Certificate of Disposition, CR-019890-24KN"), Dkt. 22, at ECF 53 (showing that Plaintiff was charged with criminal possession of a controlled substance).) On September 20, 2024, the narcotics-possession charge was

---

[6] Although Plaintiff names the alleged confidential witness in her pleadings, the Court refers to the witness as "CW" out of an abundance of caution and respect for the alleged confidential witness's privacy.

[7] Plaintiff's Fourth Amended Complaint uses bold text throughout. Because of the frequency at which it does so, the Court has omitted all emphasis from the parts of the Fourth Amended Complaint quoted herein.

dismissed. (*See* Kings Criminal Court Certificate of Disposition, CR-019890-24KN, Dkt. 22, at ECF 53.)

**B. August 2024 Traffic Stop, Arrest, and Prosecution**

On August 22, 2024, Plaintiff was stopped by an NYPD officer, Defendant Singh, while driving. (Fourth Am. Compl., Dkt. 22, at ECF 26.) Plaintiff believes that the traffic stop was "pretextual." (*Id.*) During the stop, Plaintiff claims that the officer made "sexually inappropriate and harassing remarks" to her, including stating that he "watch[es] [her] every day" and a "comment about Plaintiff's makeup appearance." (*Id.*) Plaintiff was arrested for allegedly violating CW's protective order against her. (*See id.* at ECF 27.) Plaintiff again claims that the charges were based on "fabricated allegation[s]" by CW. (*Id.* at ECF 26.) She states that CW "used spoofing applications, such as TextNow, to fabricate text messages, falsely attributing them to Plaintiff," and that the NYPD officers made "no investigative effort . . . to authenticate the claims." (*Id.* at ECF 27.)

Pursuant to this arrest, Plaintiff was arraigned on multiple charges for criminal contempt and harassment. (*See* Fourth Am. Compl. Ex. T ("Kings Criminal Court Charges, CR-035519-24KN"), Dkt. 22, at ECF 63; Fourth Am. Compl. Ex. X ("Kings Criminal Court Certificate of Disposition, CR-035519-24KN"), Dkt. 22, at ECF 71.) Some of the charges were dismissed on October 16, 2024, and the remaining charges were dismissed on June 11, 2025. (Kings Criminal Court Certificate of Disposition, CR-035519-24KN, Dkt. 22, at ECF 71.)

**C. October 2024 Prosecution**

On October 1, 2024, Plaintiff was arraigned on separate charges related to her May 2024 arrest. (*See* Dkt. 133 at ECF 3 (attaching Certificate of Disposition from Kings Supreme Criminal Court, IND-75218-24/001).) Those charges were for, *inter alia*, robbery, assault, and larceny.

(*See id.*) Justice Abena Darkeh presided over the case. (*See* Fourth Am. Compl., Dkt. 22, at ECF 13.) On February 25, 2026, all charges were dismissed. (*See* Dkt. 133 at ECF 3.)

### D. Plaintiff's FOIL Request

Pursuant to New York's Freedom of Information Law ("FOIL"), Plaintiff submitted a request to the NYPD for internal records related to the August 2024 traffic stop. (*See* Fourth Am. Compl., Dkt. 22, at ECF 32.)[8] On January 15, 2025, she received an email from the NYC/NYPD FOIL system that stated, *inter alia*, "Your request has been assigned to None Korotun (None) of this office." (Fourth Am. Compl. Ex. U ("FOIL Request Email"), Dkt. 22, at ECF 64.) Plaintiff claims that "none Korotón [sic] is an offensive, racially-motivated slur." (*See* Fourth Am. Compl., Dkt. 22, at ECF 31–32.)

## II. Procedural History

Plaintiff filed the Complaint in this action on April 16, 2025. (*See* Compl., Dkt. 1.) The next day, she filed a First Amended Complaint. (*See* First Am. Compl., Dkt. 4.) On April 28, 2025, she requested permission to further amend, which Magistrate Judge Peggy Kuo granted, and Plaintiff filed a Second Amended Complaint on May 5, 2025. (*See* Mot. to Amend, Dkt. 7; 5/01/2025 Dkt. Order; Second Am. Compl., Dkt. 9.) Then, on May 8, 16, and 19, 2025, Plaintiff submitted additional letters requesting to amend the Second Amended Complaint. (*See* Pl.'s Letters, Dkts. 11–13.) Judge Kuo granted Plaintiff permission to amend again, (5/23/2025 Dkt. Order), and Plaintiff filed the Third Amended Complaint on May 23, 2025, (Third Am. Compl., Dkt. 16). On June 2 and 16, 2025, Plaintiff filed letters seeking to add or supplement the information in the Third Amended Complaint, (Pl.'s Letters, Dkts. 19–20), which Judge Kuo construed as a motion for leave to amend the Third Amended Complaint, (6/24/2025 Dkt. Order).

---

[8] The date on which Plaintiff made the FOIL request is unclear.

Judge Kuo granted Plaintiff leave to file a Fourth Amended Complaint but stated that the Court "will permit no further amendments, corrections, or addenda to the Fourth Amended Complaint until all Defendants have been properly served . . . and the Court has held an Initial Conference." (*Id.* (emphases omitted).) On July 11, 2025, Plaintiff filed the Fourth Amended Complaint, which is the operative pleading in this action. (*See* Fourth Am. Compl., Dkt. 22.) All Defendants were served by November 2025. (*See* Summons Returned Executed, Dkts. 6, 35, 57, 60–61.)

The Fourth Amended Complaint asserts the following causes of action:

1. Count I: False Arrest, under 42 U.S.C. § 1983 ("Section 1983") and the Fourth Amendment, against Defendants Joseph Bisagno, Doe Detective #1, David Gomez, Shane Jacobs, Umar Khitab, Fernando M. Leal, Christian Lopez, Janette A. Lukowsky, Tiffany A. Martinez, Craig McGrath, Stephanie Mendozablom, Kim Petersen, Marko Sikiric, Lovepreet Singh, Cesar Valerio, Brandon A. Villabedoya, Desiste Wegemen, Dave A. Williams, and the City of New York. (*See id.* at ECF 35–36.)[9]

2. Count II: Illegal Search and Seizure, under Section 1983 and the Fourth Amendment, against Defendants Joseph Bisagno, Doe Detective #1, David Gomez, Shane Jacobs, Umar Khitab, Fernando M. Leal, Christian Lopez, Janette A. Lukowsky, Tiffany A. Martinez, Craig McGrath, Stephanie Mendozablom, Kim Petersen, Marko Sikiric, Lovepreet Singh, Brandon A. Villabedoya, and the City of New York. (*See id.* at ECF 36–37.)

3. Count III: Malicious Prosecution, under Section 1983 and the Fourth and Fourteenth Amendments, against Defendants Joseph Bisagno, Abena Darkeh, Doe Detective #1, David Gomez, Hannah Howard, Shane Jacobs, Umar Khitab, Fernando M. Leal, Christian Lopez, Janette A. Lukowsky, Tiffany A. Martinez, Craig McGrath, Jana McNulty, Stephanie Mendozablom, Kim Petersen, Marko

[9] Plaintiff also asserts that NYPD Detective Melvin Cordero, who is not a defendant in this case, is responsible for false arrest related to actions he allegedly took against her in 2018. (*See* Fourth Am. Compl., Dkt. 22, at ECF 14, 33–35.) Plaintiff acknowledges that any claim against him under Section 1983 would be outside the statute of limitations, but states that she is including information about his actions "for predicate RICO purposes," (*id.* at ECF 14), in reference to her claims under the Racketeer Influenced and Corrupt Organizations Act, (*see id.* at ECF 40–44).

Sikiric, Lovepreet Singh, Cesar Valerio, Brandon A. Villabedoya, Dave A. Williams, and the City of New York. (*See id.* at ECF 37–38.)

4. Count IV: Municipal Liability, under Section 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the City of New York. (*See id.* at ECF 38–39.)

5. Count V: Civil Conspiracy to Violate Civil Rights, under 42 U.S.C. § 1985 ("Section 1985"), against all Defendants. (*See id.* at ECF 39–40.)

6. Count VI: Racketeering and Racketeering Conspiracy, under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)–(d), against all Defendants. (*See id.* at ECF 40–44.)[10]

7. Count VII: Racial Discrimination, under Section 1983 and the Equal Protection Clause of the Fourteenth Amendment, against Defendants Cynthia Acerra, RAO Doe #2, and the City of New York. (*See id.* at ECF 44–45.)

On September 24, 2025, the Judicial Defendants requested a pre-motion conference ("PMC") regarding their anticipated motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief may be granted. (Judicial Defs.' PMC Req., Dkt. 46.) On October 14, 2025, Defendant McNulty (Plaintiff's former public defender) requested a PMC regarding her anticipated motion to dismiss for failure to state a claim. (McNulty PMC Req., Dkt. 54.) On November 17, 2025, the City Defendants requested a PMC regarding their anticipated motion to dismiss for failure to state a claim. (City Defs.' PMC Req., Dkt. 62.) The City Defendants argued, among other things, that Plaintiff's claims were barred because she had "signed a general release with the New York City Comptroller's Office in consideration of $1,000," and attached a copy of the document to their request. (*See id.* at 2–3; City Defs.' PMC Req. Ex. A ("General Release"), Dkt. 62-1.) Plaintiff opposed all PMC requests. (*See* Pl.'s PMC Opp'ns, Dkts. 47, 55, 65, 69–70.)

[10] Plaintiff also states that non-defendants CW and Detective Cordero were members of the RICO enterprise. (*See* Fourth Am. Compl., Dkt. 22, at ECF 40–42.) And, as discussed *infra*, because the Fourth Amended Complaint cites to both the substantive and conspiracy provisions of the RICO statute, 18 U.S.C. § 1962(c) and (d), respectively, the Court construes Plaintiff as raising both RICO claims.

On November 20, 2025, Plaintiff also filed a motion to strike the General Release. (Pl.'s Mot. to Strike, Dkt. 87.)

On November 26, 2025, the Court deemed a PMC unnecessary and granted all Defendants leave to file their anticipated motions to dismiss. (11/26/2025 Dkt. Order.) The Court also stated that any Defendant intending to rely on the General Release in their motion must file a response to Plaintiff's motion to strike. (*Id.*) The motions to dismiss are now fully briefed before the Court.[11] The motion to strike is also fully briefed.[12]

## LEGAL STANDARDS

### I. Rule 12(b)(1)

A claim is properly dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Determining the existence of subject[-]matter jurisdiction is a threshold inquiry," *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010), and it should therefore be resolved before reaching the merits of a case, *see Nat'l Job Corps. Ass'n v. Dep't of Lab.*, 788 F. Supp. 3d 642, 651 (S.D.N.Y. 2025). A plaintiff asserting

[11] (*See* Judicial Defs.' Mot. to Dismiss ("Judicial Defs.' Mot."), Dkt. 105; Judicial Defs.' Mem. Supp. Mot. ("Judicial Defs.' Mem."), Dkt. 106; Pl.'s Opp'n to Judicial Defs.' Mot. ("Pl.'s Opp'n Judicial Defs.' Mot."), Dkt. 110; Judicial Defs.' Reply Supp. Mot. ("Judicial Defs.' Reply"), Dkt. 121; McNulty Mot. to Dismiss ("McNulty Mot."), Dkt. 118; McNulty Mem. Supp. Mot. ("McNulty Mem."), Dkt. 118-1; Pl.'s Opp'n to McNulty Mot. ("Pl.'s Opp'n McNulty Mot."), Dkt. 119; McNulty Reply Supp. Mot. ("McNulty Reply"), Dkt. 120; City Defs.' Mot. to Dismiss ("City Defs.' Mot."), Dkt. 124; City Defs.' Mem. Supp. Mot. ("City Defs.' Mem."), Dkt. 126; Pl.'s Opp'n to City Defs.' Mot. ("Pl.'s Opp'n City Defs.' Mot."), Dkt. 128; City Defs.' Reply Supp. Mot. ("City Defs.' Reply"), Dkt. 129.)

[12] (*See* Pl.'s Mot. to Strike ("Pl.'s MTS"), Dkt. 87; City Defs.' Opp'n to Pl.'s MTS ("City Defs.' MTS Opp'n"), Dkt. 107; Pl.'s Reply Supp. MTS ("Pl.'s MTS Reply"), Dkt. 111; Pl.'s Suppl. Reply Supp. MTS ("Pl.'s Suppl. MTS Reply"), Dkt. 112.)

subject-matter jurisdiction "has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)). At the pleadings stage, "'[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison*, 547 F.3d at 170 (internal citation omitted) (first quoting *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); and then quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).

**II. Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In reviewing a complaint for failure to state a claim, the court must "accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d Cir. 2010) (citation modified). The Court is not, however, "required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester County*, 3 F.4th 86, 91 (2d Cir. 2021) (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020)).

## III. *Pro Se* Actions

*Pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, so the Court reads a plaintiff's *pro se* complaint liberally and interprets it to raise the strongest arguments and claims that it suggests. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citing *Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009)); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). If "a liberal reading of the complaint gives any indication that a valid claim might be stated," "the court should not dismiss without granting leave to amend at least once." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

# DISCUSSION

## I. Defendants' Motions to Dismiss Are Granted

### A. Plaintiff's Claims Against Justices Darkeh and Petersen Are Dismissed Pursuant to State Sovereign Immunity

The Court dismisses all of Plaintiff's claims against the Judicial Defendants—Justices Darkeh and Petersen—under Rule 12(b)(1) for lack of jurisdiction because the Judicial Defendants are entitled to state sovereign immunity. "In our constitutional scheme, a federal court generally may not hear a suit brought by any person against a nonconsenting State." *Baroni v. Port Auth. of N.Y. & N.J.*, 161 F.4th 48, 55 (2d Cir. 2025) (quoting *Allen v. Cooper*, 589 U.S. 248, 254 (2020)). This constitutional principle, known as state sovereign immunity,[13] is "a jurisdictional limitation

[13] "The Supreme Court has sometimes referred to the States' immunity from suit as 'Eleventh Amendment immunity' because the Eleventh Amendment makes explicit reference to that immunity." *Baroni*, 161 F.4th at 55 (citation modified) (citing *Alden v. Maine*, 527 U.S. 706, 712–13 (1999)). However, as the Second Circuit has explained, "while the phrase 'Eleventh Amendment immunity' may be a convenient shorthand, it is something of a misnomer because the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Id.* (citation modified) (citing *Alden*, 527 U.S. at 713). "Instead, the States'

on the power of federal courts." *Id.* at 54 (quoting *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004)). Thus, if state sovereign immunity applies, it deprives the federal court of subject-matter jurisdiction and requires that the action be dismissed. *See id.* (citing *McGinity v. New York*, 251 F.3d 84, 90 (2d Cir. 2001)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). State sovereign immunity, if it applies, "precludes a plaintiff from seeking *any* [form of] relief against states and state agencies—including monetary and injunctive relief." *Parent v. New York*, 786 F. Supp. 2d 516, 530 (N.D.N.Y. 2011) (emphasis added) (citing *Cory v. White*, 457 U.S. 85, 90–91 (1982)), *aff'd*, 485 F. App'x 500 (2d Cir. 2012).

Here, Plaintiff sues the Judicial Defendants only in their official capacities. (*See* Fourth Am. Compl., Dkt. 22, at ECF 11.) "When a defendant is sued in [their] official capacity," the Court must "treat the suit as one against the 'entity of which [the] officer is an agent.'" *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (summary order) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). The Judicial Defendants are judges in the New York State Unified Court System, which is a part of the government of the State of New York. *See Gollomp v. Spitzer*, 568 F.3d 355, 366–68 (2d Cir. 2009) (holding that the New York State Unified Court System is "unquestionably an arm of the State" that is "entitled to [state] sovereign immunity" (citation modified)). Therefore, Plaintiff's claims against the Judicial Defendants must be dismissed unless an exception to state sovereign immunity applies.

Plaintiff argues that her claims fall within the exception to state sovereign immunity created by *Ex parte Young*, 209 U.S. 123 (1908). (*See* Pl.'s Opp'n Judicial Defs.' Mot., Dkt. 110, at

---

immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution and which exists today by constitutional design." *Id.* (citation modified) (citing *Alden*, 527 U.S. at 713, 733).

ECF 2.) *Ex parte Young* permits a plaintiff to sue a state officer for an injunction against future enforcement of a state law that violates federal law. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (citing *Ex parte Young*, 209 U.S. at 159–60). Here, however, Plaintiff is neither challenging a state law nor alleging any *ongoing* violation of federal law by the New York State Unified Court System. Rather, she claims that the Judicial Defendants acted, individually and in the past, to violate her constitutional rights. Although Plaintiff argues that she is only suing these Defendants "for prospective injunctive relief[] based on their roles in authorizing or perpetuating unconstitutional actions," (Fourth Am. Compl., Dkt. 22, at ECF 18), there is no plausible factual support for her claim that any alleged unconstitutional actions are ongoing or even likely, and "a plaintiff cannot make an end run" around the doctrine of state sovereign immunity by seeking "an injunction based solely on past violations of federal law," *Idlibi v. Burgdorff*, No. 23-7384, 2024 WL 3199522, at *3 (2d Cir. June 27, 2024) (summary order) (citation modified) (citing *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000)). Moreover, even if Plaintiff were challenging a state law and properly seeking injunctive relief to prevent its enforcement, *Ex parte Young* still "does not normally permit federal courts to issue injunctions against state-court judges." *Id.* (quoting *Whole Woman's Health*, 595 U.S. at 39).

No other exception to state sovereign immunity applies. *See King v. New York*, No. 23-CV-3421 (GRB) (ST), 2023 WL 5625440, at *4 (E.D.N.Y. Aug. 31, 2023) (explaining that the two other exceptions are when the state waives its sovereign immunity or when Congress abrogates it, but that "New York State has not waived its sovereign immunity from Section 1983 claims," and "Congress did not abrogate that immunity when it enacted Section 1983" (collecting cases)).

Accordingly, Plaintiff's claims against the Judicial Defendants are barred by the doctrine of state sovereign immunity and they are dismissed in their entirety.

**B. Plaintiff's Claims Against the ADA Defendants Are Barred by State Sovereign Immunity or Prosecutorial Immunity**

Similarly, the Court dismisses Plaintiff's claims against the ADA Defendants—ADAs Howard, Leal, and Lukowsky—based on their immunity from suit. (*See* City Defs.' Mem., Dkt. 126, at 16–17.) To the extent the ADAs are sued in their official capacities, (*see* Fourth Am. Compl., Dkt. 22, at ECF 11, 14), they are agents of the State of New York and entitled to state sovereign immunity for the same reasons as the Judicial Defendants. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (holding that "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State" and is therefore entitled to invoke state sovereign immunity (citation omitted)). To the extent they are sued in their individual capacities, (*see* Fourth Am. Compl., Dkt. 22, at ECF 11, 14), they are "entitled to absolute immunity from an action for damages under [Section] 1983" for "performing prosecutorial activities." *See Ying Jing Gan*, 966 F.2d at 530 (citations omitted). Such immunity applies even if, as Plaintiff (conclusorily) claims, the ADAs "conspire[d] . . . to falsely prosecute [her]" or "conspir[ed] to present false evidence [against her] at a criminal trial." *See Washington v. Kelly*, No. 03-CV-4638 (SAS), 2004 WL 830084, at *5 (S.D.N.Y. Apr. 13, 2004) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)); (*see also, e.g.*, Fourth Am. Compl., Dkt. 22, at ECF 22 (claiming that the ADAs were acting "in furtherance of an ongoing civil rights conspiracy and racketeering scheme")).

The Court finds no merit in Plaintiff's attempt to evade the bar of prosecutorial immunity by arguing that she is only suing the ADA Defendants for "administrative, investigatory, and non-advocative functions." (*See, e.g.*, Fourth Am. Compl., Dkt. 22, at ECF 33.) Plaintiff's claims clearly challenge prosecutorial functions, such as "contributing to the ongoing malicious

prosecution" against her, (*id.* at ECF 13), "continu[ing] to manage and advance the prosecution" against her, (*id.* at ECF 32), and "declin[ing] to dismiss the indictment," (*id.* at ECF 33).

Accordingly, Plaintiff's claims against the ADA Defendants are barred by prosecutorial and state sovereign immunity, and they are dismissed in their entirety.

### C. Plaintiff's Section 1983 Claims Against Public Defender McNulty Are Dismissed Because McNulty Is Not a State Actor

The Court dismisses Plaintiff's Section 1983 claims against McNulty, Plaintiff's former public defender, because McNulty is not a state actor. "Section 1983 creates a cause of action only against persons acting under color of state law." *Tapp v. Champagne*, 164 F. App'x 106, 108 (2d Cir. 2006) (summary order) (citing *Rodriguez v. Phillips*, 66 F.3d 470, 472 (2d Cir. 1995)). "A 'public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.'" *Id.* (first quoting *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); and then citing *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997)). Here, McNulty, in her capacity as a public defender for Brooklyn Defender Services, represented Plaintiff in her state court criminal matter(s), and all of Plaintiff's claims against McNulty relate to McNulty's conduct in that role. (*See* Fourth Am. Compl., Dkt. 22, at ECF 14, 23–24 (discussing McNulty's conduct in representing Plaintiff)). McNulty therefore was not acting under color of state law, and Plaintiff's Section 1983 claims against her must be dismissed.

Plaintiff argues that McNulty can nonetheless be held liable because she "conspire[d] with state officials." (*See* Pl.'s Opp'n McNulty Mot., Dkt. 119, at ECF 9.) However, the only factual allegations that arguably support Plaintiff's conspiracy claim are that McNulty (1) made certain litigation decisions with which Plaintiff disagreed, and (2) was "aware that Plaintiff had initiated legal action against the City of New York" and was simultaneously "employed by a publicly

funded legal defense organization that receives substantial funding from the City itself." (*See* Fourth Am. Compl., Dkt. 22, at ECF 23–24.)

These allegations do not plausibly suggest that McNulty was conspiring with the City of New York, the NYPD, the judge in Plaintiff's criminal case, or the prosecutors against whom McNulty was litigating, to violate Plaintiff's civil rights. *See Tapp*, 164 F. App'x at 108 (finding a similar conspiracy allegation to be "wholly conclusory and, as such, insufficient even at the pleadings stage to establish that the public defenders were acting under color of state law" (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002); *Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993))); *see also Ciambriello*, 292 F.2d at 324 (finding that a plaintiff's "conclusory allegations of conspiracy [rang] especially hollow in light of the adversarial [litigation] relationship" between the parties alleged to be conspiring). McNulty's alleged actions during the litigation also do not suggest any conspiracy or wrongdoing; rather, Plaintiff describes what is essentially a disagreement between Plaintiff and McNulty about legal strategy. (*See* Fourth Am. Compl., Dkt. 22, at ECF 23 (arguing that McNulty "failed to challenge . . . evidence" that Plaintiff thought was fabricated, "with[held] discovery," and "pressur[ed] Plaintiff into a plea").)

Accordingly, Plaintiff's Section 1983 claims against McNulty are dismissed.

### D. Plaintiff's Section 1983 Claims Against the NYPD Defendants Are Dismissed

Next, Plaintiff's claims for false arrest, unreasonable search and seizure, and malicious prosecution under Section 1983 against a host of NYPD Officers (the "NYPD Defendants")—Officers McGrath, Martinez, Gomez, Singh, Valerio, Williams, Wegemen, Lopez, Khitab, Sikiric, Jacobs, Mendozablom, Bisagno, Villabedoya, and Doe Detective #1—are dismissed. (*See* City Defs. Mem., Dkt. 126, at 6–17, 19–22.)

1. Probable Cause, and at Least Arguable Probable Cause, Existed for Plaintiff's Arrests, the Search Warrant, and the Prosecutions

The existence of probable cause to arrest is "a complete defense to an action for false arrest," *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted), and will also "defeat a claim of malicious prosecution and unreasonable search and seizure," *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) (citations omitted). In the case of malicious prosecution, probable cause is a complete defense if it is "continuing," meaning it was not "nullified by information establishing the [arrestee's] innocence." *See Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citing *Kinzer v. Jackson*, 316 F.3d 139, 143–44 (2d Cir. 2003)); *see also Caraballo v. City of New York*, 726 F. Supp. 3d 140, 160 (E.D.N.Y. 2024) (explaining that the probable cause standard for false arrest and malicious prosecution claims are "related," and that probable cause in a malicious prosecution action means "probable cause to believe that the prosecution could succeed" (citation modified)).

"An officer has probable cause . . . when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003) (first quoting *Weyant*, 101 F.3d at 852; and then citing *Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979)). "More specifically, probable cause exists if a law enforcement officer received information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Betts*, 751 F.3d at 82 (citation modified). "When determining whether probable cause exist[ed,] courts must consider those facts *available to the officer*[*s*] at the time." *Id.* at 83 (citation modified).

"Even in the absence of probable cause, a police officer is entitled to qualified immunity" if "it was objectively reasonable for [them] to believe that [their] actions were lawful at the time

of the challenged act." *See id.* at 82–83. Thus, the claims against the NYPD Defendants must be dismissed if there was even "arguable" probable cause. *See id.* (citing *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)).

Here, Plaintiff's false arrest, unreasonable search and seizure, and malicious prosecution claims—arising out of the May 2024 search, arrest, and prosecution, the August 2024 traffic stop, arrest, and prosecution, and the October 2024 prosecution—are all based on her theory that the NYPD Defendants relied on "fabricated" evidence presented to them by the putative victim, CW. (*See, e.g.*, Fourth Am. Compl., Dkt. 22, at ECF 17, 19, 27.)[14] Namely, Plaintiff states that the NYPD Defendants relied on "false allegations" made by CW to obtain the initial search warrant in May 2024, which then "directly triggered" the events leading to her claims for false arrest, unlawful search and seizure, malicious prosecution, and conspiracy. (*See id.* at ECF 19–20; *see also id.* at ECF 22–23 (stating that CW "conspired with Defendant McGrath, other NYPD officers, and [others] to fabricate a basis for the warrant and unlawfully arrest Plaintiff").) As reflected in the search warrant affidavit attached to the Fourth Amended Complaint, CW told Officer McGrath that: (1) Plaintiff had sent her a threatening text message including a picture of a gun; (2) Plaintiff struck CW in the face with the gun and with her fist; and (3) Plaintiff took CW's purse containing $3,500. (*See* Fourth Am. Compl. Ex. V ("McGrath Aff."), Dkt. 22, at ECF 65–66.) Plaintiff also states that her August 2024 arrest for contempt following a traffic stop "originated from a fabricated allegation" by CW that Plaintiff had "violated an order of protection." (*See* Fourth Am. Compl., Dkt. 22, at ECF 26–27.) She explains that CW "used spoofing applications, such as TextNow, to fabricate text messages, falsely attributing them to Plaintiff," and that several of the

[14] Plaintiff also repeatedly asserts that the search warrant was "facially invalid," (*see, e.g.*, Fourth Am. Compl., Dkt. 22, at ECF 13, 29, 36), but that is a legal conclusion and the Court does not accept it as true or find it supported by the facts that are plausibly alleged.

NYPD Defendants made "no investigative effort . . . to authenticate the claims" using "metadata" or "call and text logs." (*Id.* at ECF 27.)

Assuming all of Plaintiff's factual allegations are true, the question is whether CW's accusations provided the NYPD Defendants with at least arguable probable cause to believe that crimes had occurred and that prosecutions against Plaintiff could succeed. The Court concludes, based on Plaintiff's own allegations, that CW's accusations provided both probable cause and arguable probable cause.[15] The NYPD Defendants "were entitled to believe [CW's] accusation[s] . . . absent credible reasons not to," and "[g]iven the facts available to the officers" that appear on the face of the Fourth Amended Complaint, it was "objectively reasonable for the officers to believe that probable cause existed." *See Betts*, 751 F.3d at 83 (citation modified) (citing *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).[16] Once the NYPD Defendants had a "reasonable basis for believing there is probable cause," they were permitted to

---

[15] "[A]lthough the probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases," the Court finds that "the facts [alleged] that supported probable cause to arrest here were sufficient to lead a reasonably prudent person to believe . . . [P]laintiff guilty, as required for probable cause to prosecute a claim." *See Ashley v. City of New York*, 992 F.3d 128, 138 (2d Cir. 2021) (citation modified) (in summary judgment posture). It is therefore proper for the Court to consider Plaintiff's false arrest and malicious prosecution claims collectively, since the same facts alleged in the Fourth Amended Complaint provide probable cause sufficient to defeat both claims. *See id.* (analyzing false arrest and malicious prosecution claims together where probable cause defeated both); *Hagans v. Maher*, No. 18-CV-1917 (JS) (AYS), 2022 WL 4538561, at *8–9 (E.D.N.Y. Sep. 28, 2022) (doing the same on motion to dismiss).

[16] Additionally, "[t]he collective knowledge doctrine provides that, for the purpose of determining whether an arresting officer had probable cause to arrest, where law enforcement authorities are cooperating in an investigation, the knowledge of one is presumed shared by all." *Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003) (citation modified) (citing *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983)). That rule exists because, "in light of the complexity of modern police work," each officer "cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." *See id.* (quoting *United States v. Valez,* 796 F.2d 24, 28 (2d Cir. 1986)).

proceed without "explor[ing] and eliminat[ing] every theoretically plausible claim of innocence." *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979); *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989)).

To the extent Plaintiff alleges that CW provided false information to the NYPD Defendants—for example, that CW "used spoofing applications, such as TextNow, to fabricate text messages, falsely attributing them to Plaintiff"—there are insufficient facts in the Fourth Amended Complaint from which to plausibly infer that the NYPD Defendants knew, or had reason to believe, that CW's information was false. Plaintiff's conclusory assertion that CW was "known to the NYPD as an unreliable informant," (Fourth Am. Compl., Dkt. 22, at ECF 31), is not supported by any facts in the Fourth Amended Complaint. And while Plaintiff suggests that other evidence contradicts CW's claims, she again does not plead facts suggesting that the NYPD Defendants knew that, or had reason to believe that, at the time they sought the search warrant, executed it, arrested Plaintiff, or participated in prosecuting Plaintiff. (*See, e.g.*, *id.* at ECF 19 (claiming that CW "could not have been an intimidated victim" because she "repeatedly returned to Plaintiff's residence after the alleged [assault]," but not providing a basis to infer that McGrath or any other NYPD officers knew that CW had returned to Plaintiff's residence).) The Court "assumes that the [officers] knew only what the [Fourth Amended Complaint] states they saw and heard." *See Coyle v. Coyle*, 354 F. Supp. 2d 207, 211 (E.D.N.Y. 2005) (doing the same).

Altogether, accepting Plaintiff's factual allegations as true, the Court concludes that CW's accusations provided probable cause, and certainly at least *arguable* probable cause, for the challenged search warrant, arrests, and prosecutions. Plaintiff's Section 1983 claims for false arrest, unlawful search and seizure, and malicious prosecution against the NYPD Defendants are therefore dismissed.

2. Plaintiff Also Fails to Plead the Personal Involvement of Defendants Bisagno, Jacobs, Khitab, Lopez, Mendozablom, Sikiric, and Villabedoya

Plaintiff's Section 1983 claims against NYPD Defendants Bisagno, Jacobs, Khitab, Lopez, Mendozablom, Sikiric, and Villabedoya fail for an additional reason: Plaintiff does not adequately plead their direct and personal involvement. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under [Section] 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013) (collecting cases).

Plaintiff's only allegation against these NYPD Defendants is that they "participated in the execution of an unlawful raid at Plaintiff's residence based on a facially invalid search warrant," and "are alleged to have knowingly relied on fabricated and backdated evidence in executing the warrant." (*See* Fourth Am. Compl., Dkt. 22, at ECF 29.) However, Plaintiff provides no facts to support the conclusory assertion that these NYPD Defendants knowingly relied on false information, and "an officer's mere presence at the scene tends to not constitute sufficient personal involvement for [Section] 1983 liability." *See Etuk v. BronxWorks*, No. 24-CV-4953 (JPC) (SLC), 2026 WL 878693, at *4 (S.D.N.Y. Mar. 31, 2026) (citation modified); *see also Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003) (explaining that a plaintiff cannot "impute bad faith to one member of an enforcement team on the basis of another member's knowledge"). "Absent additional allegations, such as allegations revealing [each of these Defendants'] conduct at the scene [or their conduct beforehand when assessing the search warrant], Plaintiff fails to sufficiently allege [their] personal involvement in any constitutional violation." *See Etuk*, 2026 WL 878693, at *4.

3. Any First Amendment Retaliation Claim Also Fails

Although the Fourth Amended Complaint does not include a cause of action for First Amendment retaliation pursuant to Section 1983, it could liberally be construed to include such a cause of action. Specifically, Plaintiff alleges that Defendant Wegemen "approached Plaintiff at her residence" and "falsely identified himself as an Internal Affairs Bureau (IAB) investigator" after Plaintiff made "formal complaints" against another NYPD Defendant, Singh, related to the August 2024 traffic stop and arrest. (*See* Fourth Am. Compl., Dkt. 22, at ECF 28–29.) She claims that she "reasonably perceived this unsolicited encounter as a deliberate act of intimidation and retaliation, intended to chill her exercise of First Amendment-protected activity—specifically, her right to file official complaints against NYPD officers." (*Id.* at ECF 29.) However, to the extent Plaintiff alleges a First Amendment retaliation claim under Section 1983, that claim fails.

To state a claim for retaliation in violation of the First Amendment under Section 1983, a plaintiff must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Walker v. Senecal*, 130 F.4th 291, 298 (2d Cir. 2025) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)).

Under the second prong, to constitute "adverse action," the defendant's conduct "must be of the type that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Id.* (internal quotation marks omitted) (quoting *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020)). Here, however, Plaintiff has not alleged sufficient facts from which to infer that Defendant Wegemen's conduct would deter a similarly situated person from exercising their right to file complaints against the NYPD. If anything, an IAB officer approaching a complainant to ask about their complaint against an officer would suggest that the complainant's concerns were being investigated and taken seriously, and certainly would not deter someone from

complaining. And to the extent Plaintiff's claim is that Defendant Wegemen's conduct was "intimidating" and thus chilling and retaliatory because he "falsely" identified himself as, i.e., *pretended* to be, an IAB officer, that allegation, though factual in nature, is wholly conclusory. But, even accepting the truth of this allegation *arguendo*, the Court still does not find it plausible to infer that this conduct would deter "a similarly situated individual of ordinary firmness" from exercising her constitutional rights, given the seemingly uneventful nature of the alleged interaction between Defendant Wegemen and Plaintiff. *See Walker*, 130 F.4th at 298. Additionally, under the third prong, causation, a plaintiff must plausibly allege that the defendant "acted with retaliatory intent." *See Greenwich Citizens Comm., Inc. v. Cntys. of Warren & Wash. Indus. Dev. Agency*, 77 F.3d 26, 30 (2d Cir. 1996). Again, there are no facts in the Fourth Amended Complaint that plausibly suggest such intent here.

Therefore, Plaintiff's First Amendment retaliation claim, to the extent she brings one, is dismissed for failure to state a claim.

### E. Plaintiff Fails to State a RICO Claim Against All Defendants

Plaintiff's RICO claims also must be dismissed. The civil RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). It also makes it "unlawful for any person to conspire" to do so. *Id.* § 1962(d). The Court liberally construes Plaintiff as alleging both substantive and conspiracy violations of the RICO statute, as to all Defendants. Plaintiff's RICO claims rest on her theory that "law enforcement officers, prosecutors, judicial officers, public defenders, and administrative personnel" formed an enterprise and "acted in concert under color of state law to violate Plaintiff's constitutional rights and obstruct justice." (*See* Fourth Am. Compl., Dkt. 22, at ECF 40.)

Plaintiff's RICO claims fail for several reasons. Most fundamentally, the Court finds that Plaintiff's claim that multiple judges, police officers, public records officers, a public defender, and the City of New York itself are involved in a massive conspiracy against her "simply exceeds the limits of plausibility." *See Fisher v. Bureau of Alcohol, Tobacco & Firearms*, No. 22-CV-6440 (CJS), 2023 WL 2082552, at *10 (W.D.N.Y. Feb. 17, 2023) (citation omitted) (reaching a similar conclusion). The Fourth Amended Complaint makes only conclusory allegations of a "wide-ranging conspiracy, relying on the various aspects of the criminal prosecution and investigation against [Plaintiff]," which cannot suffice to state a claim under RICO. *See id.* at *9; *see also Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) (affirming dismissal of civil RICO claim where the plaintiff's allegations of a conspiracy were "uniformly conclusory, speculative, and implausible"); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) (affirming dismissal of civil RICO claim as frivolous where the plaintiff's complaint was "devoid of any factual allegations" supporting the claim of a conspiracy and collecting cases holding the same). This is true notwithstanding Plaintiff's *pro se* status. *See Fisher*, 2023 WL 2082552, at *8–10 (dismissing *pro se* plaintiff's civil RICO conspiracy claim based on conclusory allegations similar to those here).

Additionally, Plaintiff has not plausibly alleged a pattern of racketeering activity. The predicate acts she alleges—"[w]arrant fraud," "false arrest," "[m]alicious prosecution," "[d]iscovery tampering and backdated documents," "FOIL obstruction and racial discrimination," "[r]etaliatory stop, harassment, and false arrest," "[f]abrication of contempt charges using spoofed texts," "[i]ntimidation by a supervising officer during misconduct inquiry," and her "2018 narcotics arrest," (*see* Fourth Am. Compl., Dkt. 22, at ECF 41–42)—do not constitute racketeering under the RICO statute. *See* 18 U.S.C. § 1961(1) (setting forth the enumerated RICO predicate

acts, none of which overlap with those alleged by Plaintiff); *see also Smith v. New York*, No. 2:26-CV-5430 (NJC) (LGD), 2026 WL 2676663, at *6–7 (E.D.N.Y. Sep. 11, 2026) (dismissing *pro se* plaintiff's civil RICO claim where the alleged acts did not "fall within the statutory definition of a 'racketeering activity'").

Nor has Plaintiff plausibly alleged that Defendants formed an "association-in-fact enterprise" with a common purpose, (Fourth Am. Compl., Dkt. 22, at ECF 40). Plaintiff only states in conclusory fashion that Defendants shared the common purposes of "violat[ing] Plaintiff's constitutional rights," "obstruct[ing] justice," "cover[ing] up official misconduct," "retaliat[ing] against Plaintiff's protected activity," and "preserv[ing] institutional credibility." (*See id.* at ECF 13, 40–41.) This is not enough. *See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (affirming dismissal of civil RICO claim where the plaintiffs "failed to provide . . . any solid information regarding the hierarchy, organization, and activities of [the] alleged association-in-fact enterprise, from which [the Second Circuit] could fairly conclude that its members functioned as a unit" (citation modified)); *Donlon v. City of New York*, No. 25-CV-5831 (DLC), 2026 WL 456892, at *8 (S.D.N.Y. Feb. 18, 2026) (dismissing civil RICO claims where the plaintiff only offered conclusory assertions of common purpose but did "not allege any facts indicating that the defendants had a common purpose to violate the law").

Finally, Plaintiff has failed to allege that Defendants' conduct had "even a minimal effect on interstate commerce," since all of the alleged actions took place in New York. *See Cymbalsky v. 522 Shore Rd. Owners, Inc.*, No. 23-CV-3104 (SIL), 2025 WL 51216, at *5 (E.D.N.Y. Jan. 8, 2025) (dismissing civil RICO claims where all defendants were based in New York and the alleged actions took place in New York).

For all of these reasons, Plaintiff's RICO claims are dismissed as to all Defendants.

### F. Plaintiff Fails to State a Civil Conspiracy Claim Under Section 1985 Against All Defendants

Plaintiff's Section 1985 civil conspiracy claim is similarly deficient. To state a claim for a civil conspiracy under Section 1985, a plaintiff must allege: (1) "a conspiracy"; (2) "for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws"; (3) "an act in furtherance of the conspiracy"; and (4) that the person "is either injured in [their] person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (first quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006); and then citing 42 U.S.C. § 1985(3)). As the Second Circuit has explained, "[t]he conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Id.* (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).

Plaintiff's Section 1985 claim, like her RICO claims, is based on her theory that there is a civil conspiracy among Defendants to violate her rights. (*See generally* Fourth Am. Compl., Dkt. 22, at ECF 39.) This claim, too, must be dismissed, because Plaintiff has not plausibly alleged a conspiracy. The Fourth Amended Complaint does not provide any "factual basis supporting a meeting of the minds," such that the Court can plausibly infer that Defendants "entered into an agreement, express or tacit, to achieve [some] unlawful end." *See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (citations omitted). And, as previously discussed, the suggestion that all of the named Defendants were part of a vast conspiracy directed at violating her rights "exceeds the limits of plausibility." *See Fisher*, 2023 WL 2082552, at *10 (citation omitted). Plaintiff also does not allege that the conspiracy was motivated by any racial or otherwise class-based discriminatory animus. She does not even identify her race or a relevant class that she belongs to for purposes of her Section 1985 claim. Instead, Plaintiff describes a highly-targeted conspiracy aimed

specifically at herself, (*see* Fourth Am. Compl., Dkt. 22, at ECF 14 (arguing that the conspiracy was "to violate Plaintiff's civil rights")), and a broader conspiracy "to conceal evidence of NYPD wrongdoing," (*see id.* at ECF 32), neither of which represents the class-based discrimination covered by Section 1985. *See Dolan*, 974 F.3d at 296 (explaining that the term "class" in the Section 1985 context "unquestionably connotes something more than [even] a *group* of individuals" and must be based on "inherited or immutable characteristics" (emphasis added)); *see also Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971) (explaining that Section 1985 was not "intended to apply to all tortious, conspiratorial interferences with the rights of others").[17]

Plaintiff's Section 1985 claim is therefore dismissed as to all Defendants.

### G. Plaintiff Fails to State a Racial Discrimination Claim Against the RAO Defendants

Plaintiff's claim for racial discrimination against two employees of the NYPD Records Access Office—Defendant Acerra and an unidentified Defendant, RAO Doe #2—also fails. To state a claim for racial discrimination under the Equal Protection Clause and Section 1983, a plaintiff "must sufficiently allege that defendants acted with discriminatory intent." *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015) (citing *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982))[18]; *accord Lewis v. City of Newburgh*, No. 20-CV-7973 (CS), 2021 WL 6052135, at *6 (S.D.N.Y. Dec. 20, 2021).

[17] To the extent Plaintiff's claim can be construed as one for selective enforcement or discrimination based on a class of one under the Equal Protection Clause, she has failed to allege any facts to support such a claim, e.g., a comparator who was treated differently than she. *See Elliott v. City of New York*, 723 F. Supp. 3d 249, 263 (S.D.N.Y. 2024) (explaining that to plausibly allege either a selective enforcement or class-of-one equal protection claim, a plaintiff must "identify a 'comparator who received more favorable treatment'" (quoting *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019))).

[18] The Court cites case law arising under 42 U.S.C. § 1981 ("Section 1981") because the standard for pleading racial discrimination for a claim under Section 1981 "is the same as for a claim alleging an equal protection violation under [Section] 1983." *See Sexton v. Dep't of*

Here, Plaintiff alleges that an unidentified employee of the RAO and their supervisor, Acerra, racially discriminated against Plaintiff by denying her FOIL request. (*See* Fourth Am. Compl., Dkt. 22, at ECF 31.) The proffered evidence of discriminatory intent is that an email confirming receipt of Plaintiff's FOIL request states, *inter alia*, "Your request has been assigned to None Korotun (None) of this office." (FOIL Request Email, Dkt. 22, at ECF 64.) Plaintiff states that "none Korotón" is an "offensive," "xenophobic," and "racially derogatory" remark. (Fourth Am. Compl., Dkt. 22, at ECF 31–32, 45.) The Fourth Amended Complaint does not state what "None Korotun" or "none Korotón" actually means, nor why that reference in the FOIL response email was offensive, xenophobic, or derogatory in any way. (*See generally id.*) Absent such information, the Court cannot find that Plaintiff raises a plausible inference that her FOIL request was denied because of her race, which, as previously noted, is not even stated in the Fourth Amended Complaint. *See Henry v. County of Nassau*, 6 F.4th 324, 335–36 (2d Cir. 2021) (explaining that to survive a motion to dismiss, a plaintiff alleging racial discrimination must "specifically allege . . . circumstances giving rise to a plausible inference of racially discriminatory intent" (citation omitted)).

Additionally, Plaintiff fails to adequately plead the direct and personal involvement of Defendant Acerra. Plaintiff claims that the unidentified RAO Defendant "authored or approved" the racially discriminatory email response to Plaintiff's FOIL request, (*see* Fourth Am. Compl., Dkt. 22, at ECF 44), and that Acerra is "named in her supervisory capacity" as the "commanding officer" who "oversaw and ratified" this email, (*see id.* at ECF 13). However, there is no "special rule for supervisory liability" under Section 1983, and a plaintiff must therefore "plead and prove

---

*Homeless Servs.*, No. 24-CV-8895 (DEH) (GS), 2026 WL 2434870, at *9 n.13 (S.D.N.Y. July 30, 2026) (citing *Brisbane v. Milano*, 443 F. App'x 593, 594 (2d Cir. 2011) (summary order)), *report and recommendation adopted*, 2026 WL 2431968 (S.D.N.Y. Aug. 19, 2026).

that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachman*, 983 F.3d 609, 618 (2d Cir. 2020) (citation modified). Plaintiff has not pleaded any non-conclusory facts suggesting that Acerra herself participated in the alleged racial discrimination relating to the FOIL response email.

Accordingly, Plaintiff's Section 1983 claim for racial discrimination is dismissed against both the unidentified RAO Defendant and Acerra.

### H. Plaintiff Fails to State a *Monell* Claim Against the City of New York

Plaintiff also fails to state a *Monell* claim. To sustain a claim for relief under Section 1983 against a municipal defendant, such as the City of New York, a plaintiff must show (1) the existence of an official municipal policy or custom, and (2) that the policy or custom directly caused plaintiff's constitutional rights to be deprived. *See Monell*, 436 U.S. at 690–91; *Hu v. City of New York*, 927 F.3d 81, 104 (2d Cir. 2019). Here, "since there [are] no violation[s] of [Plaintiff's] constitutional rights" plausibly alleged in the Fourth Amended Complaint, "the City has no liability under the rule of *Monell*." *See Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 469 (S.D.N.Y. 2008) (collecting cases). Plaintiff's claims against the City of New York pursuant to *Monell* are therefore dismissed.

* * *

In sum, the Fourth Amended Complaint is dismissed in its entirety as to all Defendants. Despite the fact that Plaintiff has already amended her complaint four times, in light of her *pro se* status and because those amendments preceded any ruling on the sufficiency of her claims, the Court grants her one **<u>final</u>** opportunity to amend her complaint to address, if possible, the deficiencies identified in this Memorandum & Order. *See Grullon*, 720 F.3d at 140 (reiterating that "a *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once"). If Plaintiff elects to amend, she must file a motion for leave to amend within

thirty (30) days from the date of this Memorandum & Order and attach her proposed Fifth Amended Complaint to the motion. The Court reminds Plaintiff that any amended complaint must include a "*short* and *plain* statement of the claim showing that [she] is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2) (emphasis added), and advises Plaintiff that she should focus on pleading factual allegations, not legal arguments or conclusions. If Plaintiff's proposed Fifth Amended Complaint does not remedy the deficiencies described in this Memorandum & Order, the Court will deny Plaintiff's motion for leave to amend, direct the Clerk of Court to enter judgment, and close this case.

**II. Plaintiff's Motion to Strike Is Denied**

Finally, the Court briefly addresses Plaintiff's pending motion to strike the "General Release" document attached to the City Defendants' PMC Request. (*See* Pl.'s MTS, Dkt. 87.) In that motion, Plaintiff invokes "Rules 11, 12(f), and the Court's inherent authority." (*See id.* at ECF 1.)

Rule 12(f) has no application here, because the document Plaintiff asks the Court to strike is not a pleading. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (emphasis added)). Indeed, Plaintiff herself makes the same argument in her reply brief supporting her motion to strike. (*See* Pl.'s MTS Reply, Dkt. 111, at ECF 2 (arguing that "Rule 12(f) does not apply because the 'General Release' is not part of a pleading" (emphasis omitted)).)

The Court also sees no reason to grant Plaintiff's requested relief under either Rule 11 or the Court's inherent authority. Importantly, Plaintiff does not argue that the document contains sensitive, privileged, or confidential information that cannot remain on the public docket. Rather, Plaintiff's arguments for striking the document are that (1) she believes the document is incomplete because it "contains a cut-off signature block, missing Plaintiff's full signature, and [contains] a

visibly incomplete bottom section," (*see* Pl.'s MTS, Dkt. 87, at ECF 2); and (2) a screenshot of the case details from one of her criminal cases shows that she was arrested on May 14, 2024, so she could not have executed the General Release on May 15, 2024, the date of her signature, (*see id.* at ECF 3, 7). Neither of these claims are supported by the evidence. As to her first argument, the General Release plainly does not contain a cut-off signature block, and it contains Plaintiff's full signature, which is also notarized. (*See* General Release, Dkt. 62-1, at ECF 3); *see also Simmon v. City of New York*, No. 23-CV-1489 (DLC), 2023 WL 6533494, at *3 (S.D.N.Y. Oct. 6, 2023) ("Under New York law, a notarized signature gives rise to a 'presumption that the signature [is] authentic, which [can] only be successfully rebutted by clear and convincing evidence.'" (alterations in original) (quoting *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 139 (2d Cir. 2018))).

As to her second argument, the screenshot Plaintiff provides shows that Plaintiff was arrested on May 14, 2024, but does not indicate how long she was detained, and the City Defendants provide credible evidence (Plaintiff's "Incarcerated Lookup" records) demonstrating that Plaintiff was, in fact, released on May 15, 2024, (*see* City Defs.' MTS Opp'n Ex. B, Dkt. 107-1, at ECF 5–6), defeating Plaintiff's argument that she could not have signed the General Release that day. The Court also rejects Plaintiff's argument that it is physically impossible for someone who is incarcerated to sign a document, which is illogical and unsupported.

In any event, the main thrust of the relief Plaintiff seeks appears to be for the Court to disregard the General Release when deciding whether to dismiss her case. (*See* Pl.'s MTS Reply, Dkt. 111, at ECF 5 ("Plaintiff respectfully requests that the Court grant Plaintiff's Motion to Strike . . . , disregard the purported 'General Release,' and deny Defendants' request for dismissal in its entirety.").) The Court has not needed to consider, and has thus disregarded, the General

Release for purposes of this Memorandum & Order. Since the Court grants the City Defendants' motion to dismiss on other grounds without considering the General Release, this request is moot. The Court accordingly denies Plaintiff's motion to strike.

**CONCLUSION**

For the reasons set forth above, Defendants' motions to dismiss, (Dkts. 105, 118, 124), are GRANTED, and the Fourth Amended Complaint, (Dkt. 22), is dismissed in its entirety. Plaintiff is granted thirty (30) days to file a motion for leave to amend, along with a copy of her proposed Fifth Amended Complaint, if she so chooses. Plaintiff's motion to strike, (Dkt. 87), is DENIED.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2026
Brooklyn, New York